<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| VASANTHA NAIR, | : | |
| | : | **Civil Action No. 07-5203 (SRC)** |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| PFIZER, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court on the parties' cross-motions for summary judgment

[docket entries 23 and 25] pursuant to Federal Rule of Civil Procedure 56.  Additionally,

Defendants Pfizer, Inc. ("Pfizer"), Pharmacia Separation Benefit Plan, and Pharmacia Separation

Benefit Plan Administrative Committee ("Administrative Committee") (collectively,

"Defendants") have filed a motion to strike the January 19, 2009 affidavit of Plaintiff Vasantha

Nair ("Plaintiff" or "Nair") [docket entry 26].  Plaintiff has also filed a motion for leave to amend

the Complaint pursuant to Federal Rule of Civil Procedure 15 [docket entry 30].

The motions have been fully briefed, and the Court has considered the parties' written

submissions.  It held oral argument on the summary judgment motions on May 4, 2009.  For the

reasons expressed in this Opinion, the Court will grant Plaintiff's motion for summary judgment

as to her ERISA claim for benefits owed under her employee benefits plan (Count One of the

Complaint) and deny the motion as to her claim for statutory penalties for failure to provide plan

documents she requested (Count Two).  Defendants' motion for summary judgment will be granted in part (as to Count Two) and denied in part (as to Count One).  Defendants' motion to strike the January 19, 2009 Nair affidavit and Plaintiff's motion for leave to amend the Complaint will be both be dismissed as moot.

## I.    BACKGROUND

This action arises out of Pfizer's denial of Nair's separation benefits upon her termination of employment approximately six months after Pfizer acquired Pharmacia Corporation.  Plaintiff sues for benefits she claims she is entitled to under the Pharmacia Separation Benefit Plan (the "Plan"), which by its terms applies to all former Pharmacia employees for a period of two years following Pharmacia's acquisition by Pfizer.  (Plan § 7.01) The Plan constitutes an employee welfare benefit plan under the Employee Retirement Income Security Act ("ERISA"), 15 U.S.C. § 1001, et seq., and thus this action is governed by ERISA.

### A.    Nair Becomes a Pfizer Employee

Nair began her employment with Pharmacia in Sydney, Australia in 1997.  In June 2002 she accepted a promotion to the position of Director, Global Management Development, which required her to relocate to New Jersey.  In that position, Nair was responsible for designing and implementing organizational effectiveness and management development programs worldwide. As a Director, she supervised eight employees holding manager positions.  Pharmacia classified positions into various bands, labeled A through E, for organizational and compensation purposes. Two Bands, D and E, were further tiered into four additional levels based on job scope, organizational impact, depth of knowledge/skills required, leadership provided and work

2

complexity.  According to this classification structure, which is set forth in Pharmacia's compensation guidelines, Nair's Director position placed her in job band D3, above tiers D1 and D2, which encompassed managers and senior managers, respectively.   Nair's eight direct reports were classified as either D1 or D2.  Nair's supervisor was classified as a Band E executive.

On April 16, 2003, Pfizer completed its acquisition of Pharmacia, and Nair became an employee of Pfizer.  Defendants admit that at some point after the acquisition, Nair's formal Pharmacia position of Director of Global Management was eliminated.  It is undisputed, however, that throughout all times that she was employed by Pfizer, Nair retained the title of Director and received the same compensation she had as a Pharmacia D3 level employee. Defendants also point out that Plaintiff remained classified in job band D3, but they admit that Pfizer did not utilize Pfizer's banding structure and that the banding classifications of all Pharmacia employees were locked in place at the time of the acquisition.

**B.     The Plan**

According to the Summary Plan Description, the Plan was amended in 2002, in anticipation of the acquisition by Pfizer, to make certain Pharmacia employees eligible for benefits upon the termination of their employment.  The Plan states that it is intended to alleviate financial hardship that may be experienced by a Pharmacia employee upon a company-initiated termination.  (Plan § 1.02.)  "In essence, benefits under the Plan are intended to be supplemental unemployment benefits."  (Id.)  In relevant part, the Plan provides that employees who are terminated due to a "Change in Control"[1] are entitled to receive separation benefits.  (Plan §

_____

[1] The parties do not dispute that the Pfizer acquisition of Pharmacia constituted a "Change in Control" under the Plan.

3

3.01.)  According to the Plan, a "Termination Due to Change in Control" is a "termination of an

Employee's employment by the Company within two years following a Change in Control that is

involuntary or that is a result of his or her rejection of an offer of continued employment with the

Company or an affiliate if such employment is not a Comparable Position."  (Plan, § 2.24.)  In

relevant part, the Plan defines the contours of eligibility for an employee experiencing a

Termination Due to Change in Control as follows:

> [A] Terminated Employee shall not be eligible to be a Participant on
> account of a Termination Due to Workforce Restructuring, Termination
> Due to Change in Control or Termination for Non-Performance if the
> Terminated Employee's employment is terminated by the Company as a
> result of his or her rejection if such employment was a Comparable
> Position.  However, such a Terminated Employee may be eligible for
> Benefits if he or she rejects an offer of continued employment with the
> company if such employment constitutes a Demotion.  To be eligible for
> Benefits in such a case the Participant must notify Human Resources that
> he or she is rejecting the offer of continued employment within two weeks
> of such offer of employment.

(Plan, § 3.01(d).)

Thus, the Plan provides that an employee may reject an offer of continued employment

and still receive separation benefits, so long as the continued employment is not in a

"Comparable Position" and so long as the rejection is made within two weeks of the offer.  The

Plan defines "Comparable Position" as "employment with the Company or a successor employer

in which the individual's levels of responsibilities would not constitute a Demotion," provided

that the employee does not have to relocate as set forth in the provision or materially increase

business travel.  (Plan, § 2.06)  It further defines "Demotion" as "an offer of continued

employment in a position that, as determined by the Company, constitutes (i) a demotion under

Pharmacia's compensation guidelines or (ii) a position that is two or more levels lower on a

Company-recognized career ladder, whether or not such employment is with the Company."
(Plan, § 2.08.)  Insofar as the provision applies to this case, it directs that to determine whether a
job constitutes a "Demotion," one must refer to Pharmacia's compensation guidelines.  (Id.)

The Pharmacia compensation guidelines state that a "demotion occurs when an employee
moves to a job with a lower band and/or tier than the current job."  (Pharmacia U.S. Total
Compensation Policies and Guidelines at 12).  The guidelines set forth that a demotion is
generally an involuntary move and, while a reduction in compensation is contemplated as a
possibility, a demotion may occur without a change in compensation.

**C.**     **The HRSDI Position**

Shortly after the Change in Control, in or about May 2003, Nair met with James Topor,
Pfizer's Director of Human Resources ("HR") Operations.  Topor was managing the Human
Resources Services Delivery Integration ("HRSDI") project, a project launched by Pfizer in 2003
to create an on-line portal through which Pfizer employees could access various HR information.
In that meeting, Topor offered Nair a position as the team leader of the HRSDI project's User
Experience sub-team.  (This Opinion will hereinafter refer to this employment position as the
"HRSDI job.")  Other aspects of what Topor and Nair discussed in their meeting are disputed.
According to Nair, she and Topor agreed that her work on the HRSDI project would be
temporary, pending her placement at Pfizer in a position in organizational effectiveness, and
would not jeopardize her right to separation benefits under the Plan.  Nair also asserts that she
and Topor agreed to meet again after she worked for three months on the HRSDI job to review
whether she should continue in the job.  Though Topor recalled having this meeting with Nair, he
testified that he did not recall discussing the temporary nature of the assignment or its impact on

her benefits.

In any event, in or about June 2003, Nair began to work on the HRSDI project.  As leader of the User Experience sub-team, Nair's responsibilities consisted of tasks related to developing a user-friendly structure for the organization of content on the HR portal, including running focus groups, cataloging HR information and supervising team members.  Nair described her job duties as User Experience sub-team leader as consisting of technical assignments on the computer rather than oversight over an area of work.  She testified that such duties would have been performed by someone on the D1 level of Pharmacia's banding structure, in other words, by a manager.  According to Nair, she performed the same project work as Diane Zanawicz, a Pfizer manager who led the Content & Services sub-team of the HRSDI project.  Topor confirmed that while their jobs dealt with different substantive areas, Nair and Zanawicz had similar types of responsibilities as sub-team leaders.  No employees reported to Nair in the HRSDI job, though some tasks were delegated to consultants.  Nair reported to Topor, a Director.

### D.  Nair Quits Pfizer and Seeks Separation Benefits

In September 2003, after working on the HRSDI project for approximately three months, Nair had a conversation with Topor about getting her career back on track.  She stated her desire to obtain a position in organizational effectiveness, and Topor suggested she meet with his supervisor Timothy Cowley, Vice President of HR Operations. Nair met with Cowley in October 2003.  Cowley advised that there were no available positions in organizational effectiveness. Following Nair's conversations with Cowley about the lack of organizational effectiveness jobs at Pfizer, Nair quit Pfizer.  On October 29, 2003, Nair informed Cowley that she did not wish to continue working on the HRSDI team and advised of her resignation of employment.

6

At some point in her October 2003 conversations with Cowley, Nair inquired about obtaining separation benefits.  Cowley advised that she would not receive separation benefits. Nair asked for the basis for Pfizer's position that she was ineligible for benefits, but none was given.  Immediately after terminating her employment with Pfizer, Nair took a job with Schering, a competing pharmaceutical company.

Nair continued to pursue her claim for separation benefits. In a December 3, 2003 e-mail to Cowley and Topor, Nair repeated her request for Pfizer's reason for deeming her ineligible. She did not receive a response, though Cowley denies receiving the e-mail.  By letter of June 3, 2004, Nair again requested that Pfizer provide grounds for the denial of her claim.  This letter was forwarded to the Administrative Committee, the body responsible for administration of benefits under the Plan.   On June 23, 2004, in accordance with the Plan's process for contesting the administration of benefits, she filed a written claim with the Administrative Committee.

Barry Westgate, Pfizer's former Vice President of Global Compensation & Benefits and Chair of the Administrative Committee at all relevant times, led the review of Nair's claim. Westgate testified that on review of Nair's claim, the Administrative Committee "wanted to ensure that there was no demotion under the terms of the plan."  (Westgate Dep. 28:17-19.)  To do this, the Administrative Committee investigated what Nair's responsibilities in the HRSDI job were.  Through questions posed to Cowley and to Michael Thomas, Vice President of Compensation at Pharmacia and then at Pfizer after the acquisition, it sought to determine the band and tier into which an employee with Nair's job responsibilities would be classified under the Pharmacia compensation structure.  Westgate acknowledged at his deposition that if Nair's responsibilities in the HRSDI project job would have put her in a lower band and tier than her

pre-acquisition position at Pharmacia, then Nair would have sustained a demotion.  The

testimony reads as follows:

> Q.      Okay.  When you talk about wanting to know the responsibilities
> of the job she was doing, you're referring to the job that she had at
> the time the claim was submitted?
>
> A.      Yes.
>
> Q.      The last job she had with Pfizer?
>
> A.      Yes.
>
> Q.      And you were trying - - you were trying to determine what band a
> person with those responsibilities would have under the old
> Pharmacia band and tier structure, correct?
>
> A.      That is correct.
>
> Q.      If those job responsibilities would have put her in a band that was
> lower than the position that she held prior to the acquisition then
> that would constitute a demotion, correct?
>
> A.      Yes.

(Westgate Dep. at 31:20 - 32:11.)  He also testified as to the Administrative Committee's focus

on identifying the duties and responsibilities of the HRSDI job to determine whether it would be

ranked in a lower job band than Nair's pre-acquisition position according to the Pharmacia band

and tier structure:

> Q.      Does this document refresh your recollection as to what Miss
> Nair's position was prior to the acquisition?
>
> A.      Yes.
>
> Q.      Is it your understanding the she was director of global management
> development?
>
> A.      If I take this a fact, yes.

8

> Q.    Did you ever learn anything in the course of your investigation that indicated that her position was not director of global management development?
>
> A.    In fact, we would not have been interested in that information.
>
> Q.    Why is that?
>
> A.    Because upon the change in control, everyone from Pharmacia had their band and tier locked in place, and so the only thing the committee would have looked at was whether the responsibilities that she claimed were a demotion were in fact – did not fit or did fit into the band and tier that were locked into place for her at the time of the change in control.  So anything prior to the responsibilities that she was – under which she was submitting the claim would not have had a bearing on our review.

(Id. at 37:16 - 38:16.)

The Administrative Committee denied Nair's claim for separation benefits.  By letter of April 7, 2005, it informed Nair that her claim was denied for failure to "fulfill the applicable provisions of the Plan," following this explanation with a quote from section 2.06, which defines "Comparable Position."  The letter did not explicitly state that the job offer Nair rejected was considered to be a "Comparable Position" nor was any further explanation given.  Westgate testified that the Administrative Committee denied the claim because it concluded that Nair's HRSDI job did not constitute a "Demotion" under the Plan.  He explained that this determination was based on the fact that Nair's compensation remained the same as it had been as a D3 level Pharmacia employee as did her job band and tier and title of Director.  (He also pointed out that the HRSDI job did not require relocation, an aspect of the Comparable Position provision that is not at issue in this case).  Westgate further stated that there was no additional reason why her claim was denied.  Defendants have provided no evidence that, based on the responsibilities of

9

the HRSDI job, the job would be ranked in the D3 band according to Pharmacia's compensation guidelines.

Nair appealed the claim pursuant to the Plan's procedures.  By letter of July 28, 2005 Westgate informed Nair that the Named Appeals Fiduciary - at the time, Sylvia Montero - upheld the Administrative Committee's determination.  No reasons were provided.  When deposed, neither Wesgate nor Montero could recall the reason for denial of Nair's claim on appeal.  The parties agree that Nair exhausted her administrative remedies prior to filing this litigation.

Nair initiated this lawsuit on October 30, 2007.  The Complaint sets forth two causes of action.  Count One pleads for benefits owed under the Plan, asserting a claim pursuant to 29 U.S.C. § 1132(a)(1)(B).  Count Two pleads for statutory penalties, pursuant to 29 U.S.C. § 1132(c)(1), based on Defendants' alleged failure to produce Plan documents in a timely fashion as required by ERISA.


II.   DISCUSSION

    A.   <u>**Summary Judgment Standard**</u>

The standard upon which a court must evaluate a summary judgment motion is well-established.  Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Kreschollek v. S. Stevedoring Co.</u>, 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must

construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48.  The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but  "must exceed the 'mere scintilla' threshold").

### B.    Plaintiff's Claim for Separation Benefits

Plaintiff sues under ERISA for separation benefits according to the Plan.  ERISA provides that a civil action may be brought by a plan participant or beneficiary to recover benefits due to her under the plan's terms.  29 U.S.C. § 1132(a)(1)(B).  Plaintiff's ERISA claim for benefits is an assertion of contractual rights, and accordingly breach of contract principles govern the instant dispute.  Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. &

Research Foundation, 334 F.3d 365, 381 (3d Cir. 2003); Kemmerer v. ICI Americas, Inc., 70

F.3d 281, 287 (3d Cir. 1995).  The Court must construe the Plan as a whole, and an unambiguous

ERISA plan can be construed as a matter of law.  Kemmerer, 70 F.3d at 288-89.  Regarding the

determination of whether a plan term is ambiguous, the Third Circuit has provided the following

direction:

> Whether terms in an ERISA Plan document are ambiguous is a question of
> law. A term is ambiguous if it is subject to reasonable alternative
> interpretations.  In determining whether a particular clause in a plan
> document is ambiguous, courts must first look to the plain language of the
> document.  If the plain language of the document is clear, courts must not
> look to other evidence.  But if the plain language leads to two reasonable
> interpretations, courts may look to extrinsic evidence to resolve any
> ambiguities in the plan document. However, it is inappropriate to consider
> such [extrinsic] evidence when no ambiguity exists.

Bill Gray Enters. v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001) (internal citations and quotations

omitted).

In this case, Plaintiff contends that Pfizer's denial of her benefits was incorrect because

she suffered a "Termination Due to Change in Control," as defined by the Plan, which makes her

eligible for separation benefits.  Nair's claim under ERISA challenging the benefit denial

requires that the Court review Defendants' benefits determination on a de novo standard, as the

Plan expressly does not give the Administrative Committee discretionary authority to determine

eligibility for benefits or construe the terms of the Plan after a Change in Control.  Firestone Tire

and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  (See also Plan, § 6.03.)

Defendants' argument in support of their benefits determination is two-fold.  First, they

maintain that Nair did not experience a Termination Due to Change in Control but rather

resigned her employment voluntarily, because she was offered and rejected an offer of continued

employment in a Comparable Position.  Second, they argue that even if the Court finds that the

job rejected by Nair was not a Comparable Position, or finds that a question of fact on this issue,

Pfizer's denial of separation benefits must be upheld as justified under the Plan provision

requiring that offers of continued employment must be rejected within two weeks for an

employee to be eligible for benefits under the Plan.[2]

        1.    <u>Comparable Position</u>

Both parties agree that as the Plan provision applies to this case, a Termination Due to

Change in Control requires that Nair have rejected an offer of continued employment in a

Comparable Position.  Their dispute centers on whether the HRSDI job offered to Nair meets the

Plan definition of Comparable Position.  Plaintiff argues that the HRSDI job was not a

Comparable Position because it involved responsibilities which would have been associated with

a D1 manager position under the Pharmacia compensation guidelines, two tiers below the D3

Director position Nair held prior to the Change in Control.  Defendants counter that the proper

inquiry in determining whether HRSDI job was a Comparable Position must focus on whether it

in fact constituted a Demotion, not on Plaintiff's subjective opinion that she suffered a

Demotion.  They argue that HRSDI job offered to Nair was not a Demotion because Nair

retained her title of Director and received the same compensation she had before the Pfizer

---

[2] Defendants would appear to give a third basis for their denial, namely, that Plaintiff voluntarily resigned her employment, making her ineligible for separation benefits under the Plan.  This argument is really subsumed within their other arguments.  The Plan defines "Voluntary Resignation" as a resignation that is a voluntary separation from employment initiated by the Employee *other than a Termination Due to Change in Control*."  (Plan § 2.26) (emphasis added).  The issue regarding when HRSDI job was rejected relates to eligibility for benefits based on a Termination Due to Change in Control.   Because the Plan itself defines a Voluntary Resignation with reference to the term "Termination Due to Change in Control," Defendants' third ground boils down to the same issue.

acquisition, facts that Nair concedes.

Interestingly, despite their divergent applications of the Plan to the facts, both parties take the position that the Plan's language regarding what constitutes a Comparable Position is clear and unambiguous. The Court agrees. The Court must look to the Plan's plain language to determine whether Nair is entitled to separation benefits. The critical provision of the Plan, quoted above in Section I of this Opinion, bears repeating. It states: "'Comparable Position' means employment with the Company or a successor employer in which the individual's **levels of responsibilities** would not constitute a Demotion . . . " (Plan § 2.06 (emphasis added).) In a separate provision, the Plan defines Demotion by reference to the Pharmacia compensation guidelines.

The plain language of the Comparable Position definition requires consideration of how the responsibilities of the HRSDI job would rank the job on the Pharmacia banding system. Thus, Defendants place incorrect emphasis on the fact that the HRSDI job left Nair's with the same Director title and at the same compensation level she had as a D3 Pharmacia employee. If the levels of responsibilities in the HRSDI job indicate or are associated with a position that would trigger the Plan's definition of Demotion, then the employment is not in a Comparable Position and the employee's rejection of the job offer falls within the definition of Termination Due to Change in Control.

In that regard, Nair has pointed to ample evidence in the record that the levels of responsibilities in the HRSDI job render that job a Demotion. Nair testified that, based on her assignments, duties and responsibilities in the HRSDI project job, the position offered to her would be a manager position in job band D1 according to the Pharmacia compensation

guidelines.  She provided a comparison of the nature of the work in the HRSDI job to her role as Director of Global Management Development.  She testified that no employees reported to her in the capacity she fulfilled in the HRSDI project, in contrast to her D3 Director position, where she had eight direct reports.  Indeed, Nair reported *to* a director.  Nair also stated under oath at her deposition that her duties and responsibilities as User Experience sub-team leader were most similar to those of Pfizer employee Zanawicz, another sub-team leader, who held a manager position.

Defendants on the other hand proffer no evidence to contravert Nair's testimony regarding how the HRSDI job would map onto the Pharmacia band and tier system.  Their witnesses admit their lack of information on this matter.  Westgate testified that neither he nor the other Administrative Committee members reviewing Nair's claim had any knowledge of her HRSDI job duties.  They have offered no witness who is able to determine what job band in the Pharmacia compensation guidelines would be applicable to Nair's HRSDI job.  Defendants have not come forward with any evidence rebutting Nair's analysis that her responsibilities would have been assigned to a D1 manager in the Pharmacia banding system.

While Defendants argue that an employee, such as Nair, does not suffer a Demotion so long as her formal title and compensation remain the same,[3] this argument misses the mark on interpreting the critical definition of Comparable Position.  Defendants' interpretation of the Plan effectively re-writes the "Comparable Position" provision to eliminate the phrase "levels of

---

[3] The Court notes that Defendants argue throughout their papers that Nair retained her D3 band and tier ranking in the HRSDI job.  This point can only be understood as another way of expressing that she remained a Director by title and that her compensation was not reduced. Pfizer admitted that it did not use the band and tier system to classify employees and that all Pharmacia employees' job bands were locked in place upon the Change in Control.

responsibility."  Besides running counter to the provision's plain language, their interpretation results in strange and illogical outcomes. It creates a situation in which, for example, an executive employee in the E1 job band could be offered a job involving purely clerical duties yet not be facing a Demotion so long as her job title and compensation remained the same.

Indeed, Defendants' argument on these motions that a Demotion under the Plan is limited to a reduction in compensation or a formal change in status is belied by their own evidence. Westgate testified that the review of Nair's claim for benefits involved investigation into Nair's responsibilities in the HRSDI  job for the purpose of determining how to classify the job under the Pharmacia band and tier structure.  He admitted that if an employee's *responsibilities* would place her in a lower band and tier than the position she held prior to the acquisition, that employee would have suffered a Demotion under the Plan.   The only evidence in the record regarding what Pharmacia band and tier would correspond to the HRSDI job based on the job's levels of responsibility is supplied by Nair.

Thus, the Court finds that Nair has demonstrated, as a matter of law, that her job responsibilities in the HRSDI job would constitute a demotion from her D3 position as Director of Global Management Development, making it a Demotion under Plan § 2.08.  In other words, she has established, based on the facts in the record, that the continued employment she was offered after the Change in Control was *not* in a Comparable Position, and that she therefore experienced a Termination Due to Change in Control under the Plan.

        2.    <u>Untimely Rejection of Offer</u>

Defendants' second argument in opposition to Nair's motion for summary judgment and in support of their own addresses the timing of events.  According to Defendants, Nair accepted

the HRSDI job when she began to perform the HRSDI project assignments in May or June 2003 and then voluntarily resigned from that position in October 2003. They add, however, that whether or not the evidence establishes as a matter of law that Nair's severance of employment from Pfizer was a "Termination Due to Change in Control" or a "Voluntary Resignation" as defined by the Plan, Defendants are entitled to summary judgment because Nair is simply not eligible for separation benefits based on the dates of job offer (approximately May 2003) and notice that she did not wish to continue employment with Pfizer in the HRSDI job (October 29, 2003). The Plan's relevant eligibility provision, § 3.01(d), requires that an employee who rejects an offer of continued employment that is not in a Comparable Position must give his or her rejection within two weeks of the offer to be eligible for separation benefits.

Defendants' "timeliness" argument fails because it is a belated, after-the-fact justification for denying Nair's claim for separation benefits. It would be improper for the Court to consider such a post hoc rationale on review of the benefits determination when it was not communicated to Nair during the administrative process, and indeed not until long after this litigation was underway. Neither the Administrative Committee's letter denying the claim nor the Named Fiduciary's decision to uphold the denial cite Plan provision § 3.01(d) or otherwise even suggest that Nair's failure to reject the HRSDI job offer within two weeks was a basis for Pfizer's determination. Moreover, the rationale was not even given during the discovery phase of this lawsuit. Defendants' responses to interrogatories and deposition questions specifically requesting the basis and/or reason for denying Nair's claim failed to invoke § 3.01(d) or even remotely refer to Nair's failure to reject the offer of continued employment within the required two-week period. Defendants raised this reason for Nair's ineligibility for the first time in their

17

brief in opposition to Plaintiff's motion for summary judgment, filed on February 17, 2009, almost four years after the Administrative Committee advised Nair that her claim was denied.

Defendants maintain that though they did not ground the denial of her claim on Nair's failure to meet the § 3.01(d) requirement, either at the Administrative Committee or Named Fiduciary level of review, the Court may nevertheless consider this basis for ineligibility in adjudicating the instant motions for summary judgment because under the Plan the Administrative Committee's determination of Nair's claim is subject to de novo review.  (Plan § 6.03.)  Defendants, however, provide no legal authority that supports their argument that because the Court may, on de novo review, evaluate a benefits determination based on the record below plus additional evidence, it may also accept after-the-fact rationales for the determination under review.

In fact, the legal authority cited to the Court militates against permitting defendant employers to "shore up" a denial of benefits with additional bases after the employee has initiated suit under ERISA to recover those benefits.  See Skretvedt v. E.I. DuPont de Nemours and Co., 268 F.3d 167, 178 n.8 (3d Cir. 2001) (observing that it would be improper to consider an ERISA plan administrator's "post hoc" reasons for denying benefits); Schreibeis v. Ret. Plan for Employees of Duquesne Light Co., No. Civ.A. 04-969, 2005 WL 3447919, at *7-9 (W.D.Pa. Dec. 15, 2005) (holding, in reliance on Skredvedt, that it was improper to consider post hoc rationales for plan's determination that plaintiff employee not eligible for benefits); Doyle v. Nationwide Ins. Co., 240 F.Supp.2d 328, 347 (E.D. Pa. 2003) (declining to consider administrator's post hoc rationales, in light of guidance provided by Third Circuit in Skretvedt); Carney v. Int'l Bhd. of Elec. Workers, No. Civ.A. 00-6270, 2002 WL 1060652, at *5-6 (E.D.Pa.

18

May 23, 2002) (holding, based on <u>Skredvedt</u>, that benefits decisions may not be supported by

post hoc rationales never communicated to applicant for benefits).  On this topic, the Third

Circuit noted, in dicta, its agreement with the policy concerns expressed by another court of

appeals in refusing to consider the justifications offered by plan administrators in litigation but

not in the administrative record.  <u>Skretvedt</u>, 268 F.3d at 168 n. 8. The <u>Skretvedt</u> court explained:

> We note in this regard our agreement with the policy concerns identified in
> *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839
> (6th Cir.2000), where the court held that it would not defer to post hoc
> rationales for denying benefits claims generated for the purpose of
> litigation by ERISA plan administrators when those rationales did not
> appear in the denial letters sent to the benefits claimants or in the
> administrative record. The court observed that:
>
> it strikes us as problematic to, on one hand, recognize an administrator's
> discretion to interpret a plan by applying a deferential "arbitrary and
> capricious" standard of review, yet, on the other hand, allow the
> administrator to "shore up" a decision after-the-fact by testifying as to the
> "true" basis for the decision after the matter is in litigation, possible
> deficiencies in the decision are identified, and an attorney is consulted to
> defend the decision by developing creative post hoc arguments that can
> survive deferential review.... To depart from the administrative record in
> this fashion would, in our view, invite more terse and conclusory decisions
> from plan administrators, leaving room for them-or, worse yet, federal
> judges-to brainstorm and invent various proposed "rational bases" when
> their decisions are challenged in ensuing litigation.

<u>Id.</u> (quoting <u>University Hospitals of Cleveland v. Emerson Elec. Co.</u>, 202 F.3d 839, 848 n. 7 (6th

Cir. 2000).  The Third Circuit, in this discussion, refers to the ERISA-imposed requirement that

benefit review boards "'provide adequate notice in writing' of a claim denial 'setting forth

specific reasons for the denial.'" <u>Id.</u> (quoting ERISA § 503, 29 U.S.C. § 1133(1)). The <u>Skretvedt</u>

court stressed the importance of providing specific reasons for denying benefits claims "both so

that applicants may introduce the proper evidence on appeal and so that a federal court may

exercise meaningful review." Id.

Defendants attempt to distinguish Skretvedt and the district court decisions that reject post hoc rationales based on the Third Circuit's commentary in Skretvedt. They point out that the courts in those cases reviewed the subject benefits determinations on an arbitrary and capricious standard, not a de novo standard. This distinction, if anything, further weakens Defendants' position that the Court should accept their belated justification for denying Nair's claim for separation benefits. If it is improper to credit an after-the-fact justification when reviewing an administrator's decision on the very deferential arbitrary and capricious standard, then certainly the Court cannot consider it on the de novo standard, which is indisputably less favorable to the administrator. Moreover, the policy concerns underlying the Third Circuit's disapproval of post hoc rationales and its emphasis on the importance of complying with ERISA § 503's notice requirements would be defeated if the Court were to uphold Pfizer's decision to deny benefits on a basis not communicated to Nair in the administrative review process or even throughout Pfizer's defense of this litigation. Pfizer's very late presentation of Nair's failure to reject her offer of continued employment within the two-week timeframe as a basis for her ineligibility for benefits not only hampered Nair's challenge to the benefits determination but also has all the signs of a being a justification developed to defend a lawsuit, not the true basis for the administrative decision under review. De novo review permits the parties to submit additional evidence, not in the record below, to support their positions that the ERISA benefit decision under review was correctly or incorrectly made. Luby v. Teamsters Heath, Welfare & Pension Trust Funds, 944 F.2d 1176, 1184-85 (3d Cir. 1991). It does not provide Defendants an opportunity to interject a fact that did not exist in the past, that is, to give a rationale for their

benefits decision that was not communicated to Plaintiff at the time of the determination as required by § 503.

### 3.   Summary Judgment for Plaintiff

The Court takes note of Defendants' argument that, according to the principle that contracts should be construed as a whole, Plaintiff is not the kind of employee for which the Plan was designed.  Defendants point out that the Plan, by its own terms, is intended to provide benefits supplemental to unemployment benefits to alleviate the financial hardships of an employee whose termination is company-initiated.  In contrast, Nair did not sever her ties with Pfizer until she had secured employment with a competing pharmaceutical company.  It is undisputed that Nair commenced her employment with Schering immediately after terminating her employment with Pfizer.  Defendants argue that she waited until she had the new job lined up to give notice at Pfizer and thus did not experience any financial hardship as a result of a company-initiated termination.  According to Defendants, even assuming the job offered to Nair was not a "Comparable Position,"  her situation falls outside of the heartland of the Plan.

The Court rejects this argument for two reasons.  One, while the Plan purpose may be in tension with its application to this situation, the Court must construe the Plan according to its plain language.  Construing the Comparable Position provision to render Nair outside of the Plan's eligibility parameters would require the Court to disregard the "levels of responsibility" language.  It cannot.  Two, the result Defendants urge the Court to reach by construing the contract as a whole would also amount to an end-run around the Court's decision not to accept or consider post hoc rationales for ineligibility.  Defendants' may argue that Nair's decision to delay

rejecting the HRSDI job offer until she had secured other employment places her outside of the intended reach of the Plan, but this amounts to a reiteration of the rationale that she did not timely reject the offer.

Based on the foregoing analysis, the Court finds that Plaintiff has met her burden under Rule 56 of demonstrating that she is entitled to separation benefits under the Plan. Defendants have failed to establish that they properly denied Plaintiff's claim for benefits and have failed to come forward with proofs raising genuine issues that would preclude this Court from awarding Plaintiff summary judgment on her ERISA claim to recover separation benefits. The Court will therefore grant Plaintiff's motion for summary judgment as to her claim for benefits brought pursuant to 29 U.S.C. § 1132(a)(1)(B) and deny Defendants' motion cross-motion as to that claim.

The Court will accordingly award Plaintiff a judgment in the amount of the separation benefit to which Plan Article IV entitles her. Plaintiff has calculated this benefit to be $158,250.30 (a figure based on her Base Pay and years of service as of the date of termination). Defendants have not contested this figure.

The Court will also award Plaintiff prejudgment interest, an equitable remedy that the Court may award in its discretion. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 131 (3d Cir. 2000). The Third Circuit has held that prejudgment interest in an ERISA action to recover plan benefits is presumptively appropriate, in recognition of the fact that otherwise, the "relief granted would fall short of making [the claimant] whole because he has been denied the use of the money which was his." Id. (quoting Fotta v. Trustees of Untied Mine

<u>Workers of Am., Health & Ret. Fund of 1974</u>, 165 F.2d 209, 212 (3d Cir. 1998)).  The Third

Circuit has approved of calculating the amount of prejudgment interest based on the statutory

post-judgment interest rate set forth in 28 U.S.C. § 1961.  <u>Id.</u> at 133.  The statute on post-

judgment interest provides that the rate should be "equal to the weekly average 1-year constant

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961.  As applied to this

case, the applicable interest rate would be 2.22%, the one-year Treasury bill rate for the week

ending June 18, 2004, the calendar week preceding the date on which Nair submitted her written

claim for separation benefits to the Administrative Committee.  The Court will accordingly apply

that rate in computing prejudgment interest.

   C.    <u>**Plaintiff's Claim for Statutory Penalties**</u>

      The Court will grant Defendants' motion for summary judgment on Plaintiff's claim for

penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), which is based on Defendants'

alleged failure to produce Plan documents within thirty days of Plaintiff's request.

      ERISA § 104(b)(4) requires a plan administrator to furnish various plan documents to a

plan participant or beneficiary upon request.  29 U.S.C. § 1024(b)(4).  Section 502(c)(1) gives the

district court the discretion to impose a statutory penalty on a plan administrator who fails to

provide the documents within 30 days of receiving a participant's written request for the

information.  29 U.S.C. § 1132(c)(1).  <u>Gillis v. Hoechst Celanese Corp.</u>, 4 F.3d 1137, 1148 (3d

Cir. 1993).

      Plaintiff has provided evidence that her former attorney requested Plan documents by

letter dated January 9, 2007[4] and that plan documents were not furnished until August 2007, when Plaintiff's current counsel sent another letter.  Defendants, however, deny receiving the January 9, 2007.  Even assuming the Court were to find that Plaintiff has established a violation of ERISA § 104(b)(4), it declines to award Plaintiff statutory penalties under § 502(c)(1) in its discretion.  Though Plaintiff need not demonstrate actual harm or prejudice as a result of the failure to produce documents in a timely fashion, Gillis, 4 F.3d at 1148, "courts have either reduced the amount of penalty or declined to award penalties where no prejudice or intentional misconduct was shown."  Carney, 2002 WL 1060652, at *7 (declining to award plaintiff statutory penalties for defendants' late production of plan documents, noting lack of harm to plaintiff and plaintiff's failure to pursue request for documents vigorously).  Here, Plaintiff has not made any demonstration that Defendants' failure to furnish the documents until approximately August 15, 2007 caused Plaintiff to incur damages or that it resulted  or prejudice. The Court takes note of the fact that Plaintiff was not diligent in pursuing the documents and, indeed, made no follow-up efforts at all to obtain the documents for months following the January 2007 request.  When a second letter was sent, on August 10, 2007, Defendants provided the documents within one week.  It appears improper to the Court to award Plaintiff the penalty of $100 a day for the time the documents were not provided when Plaintiff let the clock run and sat on the request for months without any further effort to obtain the documents.

---

[4] The Court notes that it basis this fact on the February 21, 2009 Affidavit of Patrick C. McGuinness, Plaintiff's former attorney.  It does not rely on the January 19, 2009 Nair Affidavit, which Defendants have moved to strike on the grounds that it fails to satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56(e).  The Court will thus dismiss the motion to strike as moot.

Thus summary judgment on Count II of the Complaint, for statutory penalties under ERISA § 502(c)(1), will be granted in Defendants' favor.  Plaintiff's motion for summary judgment on this claim will accordingly be denied.

**D.      Attorneys' Fees**

Having found that Plaintiff is entitled to summary judgment on her ERISA claim for benefits, the Court will also grant Plaintiff's application for attorneys' fees.

While the Court is not required to award a successful ERISA plaintiff attorneys' fees, it is well-established that "the defendant in an ERISA action usually bears the burden of attorney's fees for the prevailing plaintiff or plaintiff class." McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc., 33 F.3d 253, 254 (3d Cir. 1994).  The Third Circuit has noted that fee-shifting under ERISA "encourages private enforcement of the statutory substantive rights, whether they be economic or noneconomic, through the judicial process." Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000).

To guide a district court in evaluating whether a prevailing plaintiff in an ERISA case should receive an award of attorneys' fees, the Third Circuit has articulated the following five factors to be considered by the court:

> (1) the offending parties' culpability or bad faith;
>
> (2) the ability of the offending parties to satisfy an award of attorneys' fees;
>
> (3) the deterrent effect of an award of attorneys' fees against the offending parties;
>
> (4) the benefit conferred on members of the pension plan as a whole; and

25

(5) the relative merits of the parties' position.

Ursic v. Bethlehem Mines, 719 F2d 670, 673 (3d Cir. 1983).

Application of these factors to Nair's case weighs in favor of awarding her fees. While the evidence presented to the Court does not demonstrate that Defendants denied Nair's claim in bad faith, it does indicate a level of culpability beyond a mere erroneous determination. The Administrative Committee endeavored to discover what Nair's job duties were in the HRSDI job and determine what Pharmacia job band the position would accordingly fall into. Although it was unable to obtain information about how the job would be classified based on the responsibilities, it nevertheless denied the claim based on the Comparable Position rationale. In providing the basis for the decision, the Administrative Committee stated that Nair failed to satisfy the Comparable Position provision but did not explain in what way. Moreover, it advised Nair of its determination almost ten months after she filed her claim for separation benefits, and well over a year after her termination. As for the second Ursic factor, Defendants are clearly able to satisfy an award of attorney's fees. Pfizer is a large and successful pharmaceutical company doing business worldwide. According to its website, Pfizer is the world's largest research-based biomedical and pharmaceutical company, boasting $48.4 billion in revenues for 2007. As for the remaining factors, while the Court's disposition of this case may not confer a benefit on Plan participants as a whole - indeed, its impact appears to be limited to Plaintiff's individual case - an award of attorney's fees to Plaintiff will have a deterrent effect on Defendants with regard to the improper denial of claims. Finally, the Court finds, for the reasons discussed above, that all of the evidence presented demonstrated that the HRSDI job offered to Plaintiff was not a

Comparable Position as that term is unambiguously defined in the Plan and thus Defendants'
defense of their denial of Nair's claim on grounds that she was offered a Comparable Position
was simply not tenable.  In sum, the <u>Ursic</u> factors weigh in favor of awarding Plaintiff attorneys'
fees in this matter.

The Court will accept a supplemental submission from Plaintiff, in accordance with Local
Civil Rule 54.2, supporting her application for fees.

### E.   <u>Nair's Cross-Motion For Leave To Amend Complaint</u>

Finally, in the interest of completeness, the Court notes that in her brief in opposition to
Defendants' motion for summary judgment, Plaintiff asks the Court for leave to file an amended
Complaint to assert claims of equitable estoppel and breach of fiduciary duty under ERISA.  The
Court will dismiss this motion as moot because Plaintiff seeks leave to amend under Federal
Rule of Civil Procedure 15 only in the event that the Court considered Defendants' argument that
Plaintiff is ineligible for benefits because she did not reject the offer of the HRSDI job within
two weeks.  As discussed above, the Court has declined to consider this argument as an improper
post hoc rationale for the benefits determination.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff summary judgment on Count One
of the Complaint, awarding her separation benefits under the Plan and pre-judgment interest.  It
will grant summary judgment in favor of Defendants on Count Two of the Complaint for
statutory penalties under ERISA.  Plaintiff's motion for leave to amend the Complaint and

Defendants' motion to strike the January 19, 2009 Nair affidavit will be dismissed as moot.

Finally, having determined that Plaintiff is entitled to an award of attorney's fees as the

prevailing party on her ERISA claim for benefits, the Court will accept an application for

attorneys' fees, properly supported by documents demonstrating fees incurred prosecuting that

claim.

        An appropriate form of Order will be filed herewith.


                                   ___    s/ Stanley R. Chesler_____
                                    STANLEY R. CHESLER
                                   United States District Judge

DATED: June 10, 2009